# COUNTY OF ESSEX,

##### AT THE

## AUGUST TERM, 1869.

PRESENT:

Hon. JAMES BARRETT,
Hon. ASAHEL PECK,
Hon. WILLIAM C. WILSON, } ASSISTANT JUDGES.
Hon. JOHN PROUT,

---

ISAAC DYER *v.* THE GRAND TRUNK RAILWAY COMPANY.

*Replevin. Common Carriers. Ratification.*

Where a common carrier became liable to the owner of goods for damage, which he sustained by the fault of the carrier in their transportation, to an amount larger than the carrier's charge for the freight, and the carrier refused to deliver them, upon being demanded, until the freight charge was paid, it was *held* that as the carrier's lien was only co-extensive with the right to claim and recover freight, his detention was unlawful and the owner could maintain replevin therefor.

The question as to the carrier's right to freight and of his liability for damage can as well be tried in this action as in any other mode of suit and procedure.

The goods in question were bought by the plaintiff in Vermont of a dealer in Detroit; who, to make out a car-load, put in about forty-three dollars' worth more than the plaintiff had ordered and sent the money to pay. for, and the defendants voluntarily advanced that amount when they took the goods, without the knowledge or request of the plaintiff. The defendants claimed froight for the whole, and for the money advanced, and the plaintiff replevied the whole without repudiating the acts of the defendants in advancing said amount. *Held* that the conduct of the parties was a ratification by them of the transaction as an authorized purchase by the plaintiff, and an authorized payment on his account by the defendants; and the replevin is maintainable.

51

REPLEVIN, for unlawfully detaining fifty barrels of flour and fifty barrels of corn belonging to the plaintiff. Plea, the general issue. Trial by jury, September term, 1866. WILSON, J., presiding.

Upon the facts set forth in the opinion of the court, and the note thereto, the county court ordered a verdict for the defendants, upon motion of the defendant's counsel, to which the plaintiff excepted.

*Ossian Ray*, for the plaintiff.

*George N. Dale*, for the defendants.

The plaintiff seeks to set off unliquidated damages against the carrier's bill of the defendants, to which we object; and if he can do that, we insist that he can not set off his pretended damages against the $43.92 paid by the defendants to Leighton, because the defendants were not acting in the capacity of common carriers in advancing the purchase money for the property replevied, and it is precisely as though another party had made the advance; nor will it do for the plaintiff to claim that more flour was sent than he purchased or paid for; if so, then he had no business with it, and it is certainly error for him to replevy any more than belongs to him; besides he endorses the advance by claiming the benefit of it (the property.) If the plaintiff bought the whole car load, and paid for only a part of it, Leighton had a right to hold the property until this advance was made, and when made the same right belonged to the defendants. *Duncan* v. *Green*, 6 Gill., 478.

Argued August term, 1868. Held for advisement to August term, 1869, when the opinion was delivered by

BARRETT, J. The only question is whether the action of replevin may be maintained in the case made by the plaintiff's evidence, in substance as follows: The defendants, as common carriers, transported grain and flour from Detroit to Island Pond, for which the charge, at the established rates, was $238. The defendant paid at Detroit, towards the purchase money for the

flour and grain, $43.92 * Much longer than the usual time was occupied in the transportation, without excuse or explanation, and thereby damage was caused to the plaintiff to a larger amount than said charge for freight and money advanced. On the arrival of the property the defendants declined to deliver it to the plaintiff without first being paid said freight and money. The plaintiff made known the damage he had sustained by the delay in the transportation, and claimed that, by reason thereof, the defendants were not entitled to be thus paid, and made a special demand for the delivery of the property. The defendants refused to deliver it on such demand, unless first paid said freight and money. Thereupon the plaintiff brought this suit, and thereby obtained possession of the whole of said property. The right of the defendants to retain possession of the property after its arrival at the place of destination, and to refuse to deliver it to the plaintiff on his demand, depends on the question whether a lien existed in favor of the defendants upon it for the freight and money advanced. It is fundamental in the law that the right of the carrier to have his freight results from performance, on his part, of the contract in virtue of which he undertakes and proceeds in the carriage of the property. If they should fail to carry, and have ready for delivery, they could not maintain a claim for freight. If in the carriage they should subject themselves to liability for damage to the consignee in respect to the property carried, that would disentitle them, to the extent of such liability, to demand and recover freight. And if the damage should exceed the amount of the freight to which they would otherwise be entitled, of course they would not be entitled to demand and recover anything for the carriage of the property. Such seems to be the result of unquestioned principles, and of the

---

* The occasion of the defendants paying the said $43.92 was as follows : Said flour and grain was purchased of one Leighton in Detroit and paid for in advance by the plaintiff, except the said $43.92, and the said Leighton, in order to make up a car-load, put in flour and grain to this amount, in addition to the plaintiff's order and purchase, and the defendants, before loading the same on their cars for transportation, voluntarily and without the plaintiff's knowledge or request, advanced to the said Leighton the said sum in payment of the said extra quantity.                                        REPORTER.

decided cases bearing upon the subject. The carrier's *lien* is, of course, only co-extensive with his right to claim and recover freight. We have not been referred to, nor have we found, any case in which the question whether replevin could be maintained upon such facts as constitute the substance of the present case has been raised and decided. Of the case of *Cutting et al.* v. *the Grand Trunk R. Co.*, 13 Allen, 381, and of *Boston & Maine R. Co.* v. *Brown, et al.*, 15 Gray, 223, all that can be said is, that in one the right to maintain replevin, in a case much like the one before us, was not questioned ; and in the other it appeared that replevin had been maintained, either with or without controversy, where freight was claimed and refused, when the suit was brought. The case of *Humphreys* v. *Reed*, 6 Wharton, 435, embodies a principle which, in its legitimate results and applications, would seem to warrant the *replevin* in a case like the present. In that case the carrier delivered the goods to a wharfinger, with directions not to deliver them to the consignee till the freight should have been paid. The consignee called on the wharfinger for the goods, and was told by him what his instructions were. Thereupon, he insisted to the wharfinger that the goods had been damaged in the transportation, through the fault of the carrier, to an amount exceeding the price of the freight, and that he had a right to have his goods without paying the freight, and the wharfinger delivered them to him. Thereupon, the carrier sued the wharfinger in trover for the goods, relying on his lien for the freight. The defense set up was the damage to the goods, and it was held that such damage being shown he had no right to claim the payment of freight of the consignee, and of course no right to hold the goods himself, or authorize another to hold them for him as against the consignee, and he was defeated in the action. It is true that some fifty years ago it was held in England that such damage could not be set up in defense, in whole or in part, to a claim for freight, when the goods had been delivered. But that doctrine has been discarded in this country, and a contrary doctrine established. See *Snow* v. *Carruth*, SPRAGUE, J., Dis. Ct., Mass., 19 Law Rep., 198 ; also *Humphrys* v. *Reed, supra*, which overruled *Davidson* v. *Groynne*, 12 East, 380, and *Shields* v. *Davies*, 6 Taunt., 65.

There would seem to be no good reason why the liability of the carrier to the freighter for damage accruing, through his fault, in the carriage of the property, should not be asserted and determined by way of defense to his claim for freight, as well as by a cross action for such damage. Indeed, not only do the analogies of cases involving similar relations of subject matter and parties justify it, but there are reasons peculiar to this particular class of cases that seem to render it peculiarly proper.

I only mention one, viz. : the impolicy, and in some cases the exposure to loss, of compelling the freighter to pay the demanded freight, and trust to the responsibility of the carrier at the end of a lawsuit for the damage sustained by him through the fault of the carrier in the transportation for which he has claimed and been paid the freight. When the carrier sues for his freight, he gets all he is entitled to from the freighter, when he is made to allow as against his claim such damage as his own fault has caused to the freighter. No question of lien is involved in such a case.

The same reasons, grounded on principles, and arising from convenience, seem to justify the action of replevin in cases like the present. The question of the carrier's right to freight, and of liability for damage, can as well be tried in this action as in any other mode of suit or procedure. The defendant is subject to no peril of losing any security he may have had by virtue of his lien on the property, for he has not yielded his lien, and the replevin bond has become substituted for the property itself. The property has thus been put to the uses designed, and the defendant is secured for all the rights he had in respect to the freight, as fully as if he had retained custody of the property itself.

As to the $43.92 advanced and paid by the defendants toward the purchase of the goods, this was paid without request of the plaintiff, and by reason of the party of whom the plaintiff purchased, putting in, to make out a full car-load, more grain than the plaintiff sent money to pay for.

As the defendants asserted their right to hold all the property until this sum, as well as the freight, should be paid, without designating any particular part or portion which they claimed to hold, either as their own property or by way of lien, and as the

plaintiff took the whole upon his replevin, claiming and treating the whole as being his own property, we think this conduct of the parties was a ratification by the parties of the transaction as an authorized purchase by the plaintiff, and an authorized payment on his account by the defendants, and that the defendants' claim for such payment was put and treated as standing on the same ground, so far as claim and lien are concerned, as their claim and bill for freight.

Judgment of county court is reversed, and the cause remanded.